798 P.2d 55

**Elsie M. HAGLER, Claimant–Appellant,**

**v.**

**MICRON TECHNOLOGY, INC., Employer, and Mission Insurance Company, Surety, Defendants–Respondents.**

**No. 17610.**

Supreme Court of Idaho.

Sept. 21, 1990.

Elsie M. Hagler, Boise, pro se.

Quane, Smith, Howard & Hull, Boise, for defendants-respondents. Robert D. Bowen, argued.

BISTLINE, Justice.

Elsie Hagler was hired by Micron Technology Inc., in April of 1983. In the spring of 1984 she was working as a photo operator in Micron's wafer fabrication department. Because her job put her in contact with various chemicals, she wore vinyl gloves to protect her hands. However, in spite of these precautions, she developed a rash on her wrists. She had Dr. Gerald G. Overly, a dermatologist, examine the rash in June of 1984. Dr. Overly performed a fungus test; the results were negative. He determined that Hagler had "contact dermatitis," which was caused by an allergic reaction to the gloves she wore at work. He instructed her to wear cotton glove liners; she did so, and her condition improved. Micron's surety paid for Hagler's expenses.

Later that summer, Hagler asked Micron to assign her to another work area so that she could avoid all contact with the chemicals that caused her dermatitis. Micron denied her request. In response, Hagler resigned and immediately reapplied to another department at Micron in September of 1984. She got the job.

In February of 1985, Hagler was laid off work. In October of 1985, she went back to Dr. Overly because of further problems with the skin on her hands. Dr. Overly performed the same test for fungus that he had performed during Hagler's first visit. Unlike the previous test, the results of this test were positive. A later fungus test, performed in July of 1986, was also positive. The fungus was identified as T-rubrum, or ringworm.

According to Dr. Overly, ringworm is often a chronic and recurring condition. Consistent with these characteristics, the doctor initially thought that the fungus on

Hagler's hands could be traced to her previous rash. However, during a February 1988 examination, Dr. Overly also tested Hagler's feet and discovered the same fungus. This caused Dr. Overly to change his mind about the cause of the fungus on Hagler's hands. His revised opinion was that the ringworm on Hagler's feet, which she admits had been there for several years, caused the ringworm on her hands. He also concluded that the fungus on Hagler's feet was not work related.

Hagler, who had filed a notice of injury on July 26, 1984, made an application for a hearing before the Industrial Commission on January 5, 1987.[1] She claimed that she was entitled to workers' compensation benefits for the fungus on her hands. A hearing was held on February 17, 1988. She appeared *pro se*. She and her daughter, Darlene, were the only witnesses. Darlene attempted to introduce various passages from a medical treatise by reading the passages to the Commission. The Commission struck these readings and then denied Darlene's motion to admit the treatise into evidence. After the hearing had commenced, Hagler, appearing *pro se*, took Dr. Overly's oral deposition. The record of the deposition was entered into evidence.

■ The Commission delivered its findings of fact, conclusions of law, and order on May 16, 1988. The Commission found that Hagler's ringworm was not caused by her employment at Micron. Hagler appealed. The issue before this Court is whether the Commission's findings are supported by substantial and competent evidence.

■ A workers' compensation claimant has the burden of proving that the condition for which he or she is seeking compensation is causally related to an industrial accident. *Neufeld v. Browning Ferris Indus.*, 109 Idaho 899, 712 P.2d 600 (1985). The claimant must also present medical testimony that supports the claim to a reasonable degree of medical probability. *Bowman v. Twin Falls Constr. Co.*, 99 Idaho 312, 581 P.2d 770 (1978). When the Industrial Commission's findings of fact

are supported by substantial and competent, although conflicting evidence, they will be affirmed on appeal. Idaho Code § 72–732; *Matter of Snyder*, 109 Idaho 167, 706 P.2d 56 (1985).

In this case, the only medical testimony that was presented to the Industrial Commission was that of Dr. Overly. He unequivocally testified that the ringworm on Hagler's hands was not caused by anything she encountered in her work at Micron. Specifically, he testified that the ringworm on Hagler's hands was caused by the ringworm on her feet and was not related to her prior rash. He further testified that he did not think that the ringworm on Hagler's feet could have been work related. Since Dr. Overly's was the only medical testimony presented, Hagler failed to carry her burden of providing medical testimony in support of her claim.

■ Other evidence presented on Hagler's behalf, and admitted by the Commission, were Hagler's testimony and photographs of her hands. These sources did little to establish causation. The following excerpt from Hagler's appellate brief indicates that she did not understand that she bore the burden of proving causation: "I feel the Commission erred in their decision based on Dr. Overly's reports. Had they checked further into medical technology, they may have changed their decision." Hagler apparently wanted the Commission to "check further into the existing medical technology by reading from the medical treatise" that her daughter had attempted to read and which the Commission refused to admit into evidence. While the Commission should have examined the treatise, its failure to do so was harmless error.

■ Strict adherence to the rules of evidence *is not* required in Industrial Commission proceedings and admission of evidence in such proceedings is more relaxed. I.C. § 72–708; *Kinney v. Tupperware*, 117 Idaho 765, 792 P.2d 330 (1990). Given this standard, there was no reason for the Industrial Commission to strike Darlene Ha-

---

1. This application was made a little over a year before Dr. Overly would discover the fungus on

Hagler's feet and change his opinion about the cause of the fungus on her hands.

gler's testimony and readings from the medical treatise, or for the Commission to refuse to admit the treatise into evidence. The treatise was relevant and its admission into evidence would have been consistent with the policy in Industrial Commission proceedings, *i.e.*, simplicity, accommodation of claimants, and justice.

Since the inception of Idaho's Workers' Compensation Act, Industrial Commission proceedings have been informal and designed for simplicity; the primary purpose of these proceedings being the attainment of justice in each individual case. *See* I.C. § 72–708; *In re Bones*, 48 Idaho 85, 280 P. 223 (1929); *Feuling v. Farmer's Co-op Ditch Co.*, 54 Idaho 326, 31 P.2d 683 (1934). Thus, Industrial Commission proceedings are conducted "as far as possible in accordance with the rules of equity."[2] I.C. § 72–708. Consistent with these policies, the Commission has historically been imbued with certain powers that specifically enable it to simplify proceedings and enhance the likelihood of equitable and just results. Among these powers are those delineated in I.C. § 72–709(1) and I.C. § 72–714(3) (emphasis added):

> 72–709(1) The commission or any member thereof or any hearing officer, examiner or referee appointed by the commission shall have the power to subpoena witnesses, administer oaths, take testimony, issue subpoenas duces tecum, and to *examine such of the books and records of the parties to a proceeding as relates to the questions in dispute.*

> 72–714(3) The commission, or member thereof, or a hearing officer, referee or examiner, to whom the matter has been assigned, *shall make such inquiries and investigations* as may be deemed necessary.

The policies of simplicity and equity are underscored by the *pro se* nature of the Industrial Commission proceedings, such as this was. From the time of its creation, the Industrial Commission and its proceedings have contemplated *pro se* claimants. The original notion was that the Industrial Commission would be like most any other Commission. It would lend a ready ear and a helping hand to a citizen with a grievance; the overriding purpose being to do justice in the given situation. This potential for limited assistance to claimants is sensible because *pro se* claimants cannot be expected to have the legal expertise or wherewithal possessed by attorneys, many of whom specialize in workers' compensation cases either on behalf of the claimants or on behalf of sureties. For all of these doctrinal and policy reasons, the Industrial Commission erred when it refused to consider the medical treatise offered by Hagler. Although these errors were most unfortunate they were, in this particular case, harmless. Moreover, none of our opinions in recent years have had occasion to remind the Commission of the inherent powers it possesses. In addition to that, we are well aware that the volume of compensation cases has over the years increased to the point where the Commission cannot give any case, including those presented *pro se*, the attention which was possible thirty or forty years ago.

The Commission's findings are supported by substantial and competent evidence. Hagler was unable to meet her burden of

---

**2.** From Black's Law Dictionary 482–484 (5th ed. 1979): "**Equitable.** Just; conformable to the principles of justice and right. Existing in equity; available or sustainable in equity, or upon the rules and principles of equity.

As to equitable Assets, Construction; Conversion; Easement; Ejectment; Estate; Garnishment; Levy; Mortgage; Title, and Waste, see those titles."

. . . .

"**Equity.** Justice administered according to fairness as contrasted with the strictly formulated rules of common law. It is based on a system of rules and principles which originated in England as an alternative to the harsh rules of common law and which were based on what was fair in a particular situation. One sought relief under this system in courts of equity rather than in courts of law. The term 'equity' denotes the spirit and habit of fairness, justness, and right dealing which would regulate the intercourse of men with men. *Gilles v. Department of Human Resources Development*, 11 Cal.3d 313, 113 Cal.Rptr. 374, 380, 521 P.2d 110, 116. Equity is a body of jurisprudence, or field of jurisdiction, differing in its origin, theory, and methods from the common law; though procedurally, in the federal courts and most state courts, equitable and legal rights and remedies are administered in the same court."

providing medical testimony in support of her claim. Furthermore, she provided scant evidence that her condition was caused by her work, instead likely hoping that the Commission might find a scintilla upon which to find in her favor. In addition, Hagler's own medical expert provided substantial testimony that her condition was not work related. We, too, as was undoubtedly so with the Commission, would like to be able to afford some relief, but when a claimant cannot muster the necessary evidence, all hands are tied.

In light of the foregoing, we affirm the Commission's decision. Costs are awarded to Micron. Micron's request for attorneys' fees is noted. We have previously ruled on such requests. *Garcia v. J.R. Simplot Co.*, 115 Idaho 966, 772 P.2d 173 (1989).

McDEVITT, J., concurs.

BOYLE, J., concurs in the result.

BAKES, Chief Justice, concurring in result and dissenting in part:

I concur in the result reached by the Court in this case, which affirms the Industrial Commission's order. However, that portion of the Court's opinion holding that it was error (albeit harmless) for the Commission to refuse the admission of testimony from a medical textbook is contrary to our prior cases, the case law from other jurisdictions, and the Idaho Rules of Evidence.

As the Court's opinion points out, the claimant suffered from a skin condition (ringworm), and there was an issue as to the cause of that condition. At the hearing, the claimant's own doctor testified that the ringworm was not job-related, but spread to her hands from her own feet. In an attempt to prove her claim, in spite of her own doctor's opinion, the claimant, proceeding *pro se*, had her daughter read an excerpt from an undisclosed medical book to the commission. The colloquy at the hearing went as follows:

Mr. Geddes: Do you have some testimony that you want to give today?

The Witness: Okay. Can I read out of this book?

Mr. Bowen: What are you reading out of?

The Witness: Medical books.

Mr. Bowen: Not as far as I am concerned, but you can ask these gentlemen here. I would object.

The Witness: It just tells, you know, some things that, you know, what—like dermatitis and eczema and fungus infections can be caused from, you know, how they can be treated and so on.

Mr. Geddes: I am going to overrule the objection and let you go ahead. It's irregular, but I'm going to let you go ahead. You're not going to read a whole chapter, are you?

The Witness: I hope not. I could almost, but: "Fungal infections of the nails, toenails or fingernails or skin," they can keep reoccurring, treatment doesn't stop it. . . .

Mr. Bowen: . . . I'd move to strike the testimony, and I'd like a continuing objection to this line. . . .

Mr. Geddes: Yeah, you're not a medical doctor, are you?

The Witness: No. Do you want to read the book?

Mr. Geddes: That's irregular, ma'am, and I'm going to grant the motion to strike the testimony that you've put forth here.

The Court's opinion states that, "There was no reason for the Industrial Commission to strike Darlene Hagler's testimony and readings from the medical treatise, or for the Commission to refuse to admit the treatise into evidence. The treatise was relevant and its admission into evidence would have been consistent with the policy in Industrial Commission proceedings, *i.e.*, simplicity, accommodation of claimants, and justice." *Ante* at 58. The statement is predicated on the claim that the Industrial Commission is not strictly bound to the rules of evidence; the general policy favoring simplicity and equity in worker's compensation proceedings; and purports to be based upon portions of I.C. § 72–709(1) and 72–714(3). I do not believe that these rea-

sons support the conclusion reached by the majority opinion for the following reasons.

First and most importantly, this analysis is plainly foreclosed by prior Idaho cases that have addressed this issue, *i.e., Hite v. Kulhenak Building Contractor*, 96 Idaho 70, 524 P.2d 531 (1974), and also *Thom v. Callahan*, 97 Idaho 151, 540 P.2d 1330 (1975). The *Hite* case is directly on point. In *Hite*, the claimant suffered the loss of one kidney. The issue before the Commission was the extent of the claimant's disability. Claimant produced an expert who testified that his disability was 75%. The employer's expert testified that the claimant's disability was only 10%. The employer's expert based his testimony solely on information taken from the American Medical Association Guides to Evaluation of Permanent Impairment. The expert testified that the figure taken from the guides was the one that he used. He also stated that the guides were prepared by experts in the field of medical disability rating and that his testimony was based entirely upon the guides.

This Court upheld the ruling of the Industrial Commission to admit information taken from the AMA Guides, but, in so doing, carefully defined the circumstances under which testimony from medical books may be admitted. The *Hite* Court stated:

> The legislature therefore must have intended that the Commission should have the discretionary power to consider any type of reliable, trustworthy evidence having probative value in the area of disability rating, even though that evidence may not be admissible in a court of law.
>
> The guides in question were prepared by committees of experts in the field of disability compensation. None of those experts had any interest in the outcome of this case. The guides are recognized authority in the area of disability rating. They are, in short, trustworthy and reliable. Of course, it will still be necessary to introduce the evidence through witnesses who must be able to testify that they are recognized authority. By our decision today, we are not holding that the Industrial Commission can take no-

tice of anything it desires. Only, that recognized treatises or works dealing with topics in which the Commission possesses expertise may be admitted into evidence through witnesses to be used as substantive evidence.

96 Idaho at 72, 524 P.2d 531. The foregoing excerpt points out the narrow use which may be made of medical treatises and expressly delineates the circumstances under which such evidence may be admitted. First, an expert witness must testify that the book or treatise in question is a recognized authority. Second, the treatise must be trustworthy and reliable. Third, the treatise must deal with an area in which the Commission has expertise, *i.e.*, disability ratings. Finally, it is within the discretion of the Commission to allow such evidence in.

In this case the record reflects that none of these requirements were met. Neither claimant nor her daughter were medical doctors or experts capable of giving the requisite recognition to the authoritativeness of the text from which they read. The claimant's daughter did not demonstrate, nor, not being an expert, could she have demonstrated that the textbook in question was a recognized, reliable or trustworthy authority on the subject at issue. The claimant's daughter did not even disclose the name of the book. For all we know, the book may have been a Reader's Digest home medicine guide. Moreover, the cause, origin, and nature of skin diseases is not an area in which we might conclude that the Commission has particular expertise, as was the situation in the *Hite* case which dealt with disability rating guides, a subject which the Commission considers nearly every day. Additionally, it was within the discretion of the Commission to rule on that testimony, as the *Hite* case clearly spells out. It is quite clear, then, under the factors set out in *Hite*, that the Commission in the present case did not abuse its discretion in not allowing Hagler to quote from the undisclosed "medical book."

Other courts that have addressed this issue have held that medical treatises are

not properly admissible as substantive evidence in a worker's compensation hearing. *See* 17 ALR3d 993 and cases cited therein. Those cases follow the general evidence rule that such medical books are not admissible even when they are properly identified and authenticated and shown to be recognized as standard authorities, because their admission in evidence would, in effect, admit the testimony of the author of the book without affording opposing counsel any opportunity to cross examine him. They are hearsay. These cases are all predicated on the same policy expressed in our evidence rules dealing with admission of medical textbooks at trial. Idaho Rule of Evidence 803(18) provides:

> **Rule 803. Hearsay exceptions; availability of declarant immaterial.—**
>
> . . . .
>
> (18) Learned treatises. To the extent called to the attention of an expert witness upon cross-examination or relied upon by him in direct examination, statements contained in published treatises, periodicals, or pamphlets on a subject of history, medicine, or other science or arts, established as a reliable authority by testimony or admission of the witness or by other expert testimony or by judicial notice. If admitted, the statements may be read into evidence but may not be received as exhibits, except upon motion and order for good cause shown.

Those cases, and Rule 803(18), all require that, prior to the admission of testimony from a medical textbook or treatise, a sufficient foundation must be laid, and then the testimony is only allowed for the purposes of impeachment. *See, e.g., Lundstrom v. Brekke Enterprises, Inc.*, 115 Idaho 156, 765 P.2d 667 (1988). Here, there was no foundation laid, and the reading from the book was offered for substantive purposes. It does not fit any of our evidence rules or case law for admission of evidence.

Accordingly, I concur in the Court's decision affirming the Industrial Commission's order, but I dissent from the Court's conclusion that the Commission erred in refusing to admit into evidence the daughter's reading from the alleged medical treatise.

JOHNSON, J., concurs.