# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 39337

| | |
|---|---|
| MATTHEW MAZZONE, ) | |
| ) | |
| Claimant-Appellant, ) | Boise, February 2013 Term |
| ) | |
| v. ) | 2013 Opinion No. 55 |
| ) | |
| TEXAS ROADHOUSE, INC., Employer, ) | Filed: April 26, 2013 |
| and HARTFORD INSURANCE ) | |
| COMPANY OF THE MIDWEST, Surety, ) | Stephen W. Kenyon, Clerk |
| ) | |
| Defendants-Respondents. ) | |

Appeal from the Industrial Commission of the State of Idaho.

The decision of the Commission is <u>affirmed</u>. Costs on appeal are awarded to Respondent.

Stephen A. Meikle, Idaho Falls, attorney for Appellant.

Alan R. Gardner, Boise, attorney for Respondent.
_____

W. JONES, Justice

## I. NATURE OF THE CASE

This is an appeal from an order of the Idaho Industrial Commission ("Commission") denying Appellant, Matthew Mazzone ("Mazzone"), workers' compensation pursuant to I.C. § 72-451 for psychological injuries allegedly arising as a result of an industrial accident wherein Mazzone tripped and fell into a deep fat fryer while employed at Texas Roadhouse. Mazzone contends the Commission's order is not based on substantial and competent evidence.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On November 13, 2005, while working in the kitchen of Texas Roadhouse, Mazzone suffered a severe burn on his right arm when he tripped and plunged his right arm into a 360 degree deep fat fryer. By Mazzone's account, he was in so much pain after burning his arm that he simply crawled under the kitchen sink and cried. Mazzone was taken to the emergency room at Eastern Idaho Regional Medical Center. He was subsequently transferred to the University of

Utah Burn Center ("Burn Center"). Mazzone claims that after the incident he began to suffer from nightmares, night tremors, and flashbacks.

Mazzone was at the Burn Center for four days where his burn was debrided and dressed daily. During his time at the Burn Center, Mazzone was twice noted in medical records to be exhibiting exaggerated pain behaviors.[1] Between November 18 and at least November 28, 2005, Mazzone stayed at a hotel in Salt Lake City so as to receive follow-up care. Attending physicians reported on November 23, 2005, that Mazzone was healing well and that his pain was well controlled. He also demonstrated good range of motion and wound-healing. In a December 13, 2005, follow-up at the Burn Center, Mazzone had quit cold turkey his opioid medication, at which point he began to experience nightmares and flashbacks. Mazzone was referred to a psychiatrist in Idaho, Dr. Brock.

During Mazzone's sessions with Dr. Brock, chart notes indicate that Mazzone was healing well, but his pain was increasing. Additionally, Mazzone had thrown away all of his pre-injury medications and was beginning to have nightmares and was feeling more anxious. On June 9, 2008, Dr. Brock's office clarified that Mazzone's nightmares and anxiety were related to returning to work but noted that his arm injury was not the primary concern of their sessions. Mazzone was assessed a GAF score of 55/85—the same assessment he had before the industrial accident.

Three months after the industrial accident, Mazzone returned to work, but he was allegedly so overwhelmed that he asked to transfer to another Texas Roadhouse location in Massachusetts because he was nervous, sick, worried, and nauseous working at the site of the accident. Dr. Brock's chart notes from January 9, 2006, indicate that Mazzone had returned to work with anxiety, but the anxiety was worse on Wednesdays when he did inventory. Mazzone was also sleeping better and his nightmares were improving. Dr. Brock also modified Mazzone's

---

[1] The following was included in a counseling chart note taken on November 17, 2005:

> [Mazzone] presented with pressured speech, nonlinear and repetitive in questions, and had a difficult time keeping information straight. He seemed to have difficulty focusing and was almost grandiose in his impression of the injury. I continually had to re-focuss [sic] and redirect him. There were several times that I provided information that I know nursing had already provided and he states "no one has told me this before." His wife seems to respond to his decision making by pulling back and not making any decisions.

GAF score to 65/85. A couple weeks later, Dr. Brock improved Mazzone's GAF rating to 75/85[2] after Mazzone reported that he was sleeping well without sleep medication. Even though Mazzone had the occasional nightmare, he was able to subsequently return to sleep.

On February 21, 2006, Dr. Thurman, a hand surgeon, released Mazzone to begin working 40 hours per week with two consecutive days off. The only restriction was for Mazzone to wear a protective glove as needed. Mazzone reported some swelling in his right hand but wanted Dr. Thurman to increase his work release for more hours. On March 1, 2006, Dr. Brock maintained Mazzone's GAF assessment of 75/85. He noted that Mazzone had not needed Xanax for a week, sometimes had sleep difficulties, and had occasional waves of anxiety while at work.

Following shifts lasting between ten and twelve hours, Mazzone experienced swelling and pain in his arm. On March 21, 2006, Dr. Thurman issued a new work release limiting Mazzone's daily work hours. The week of April 9, 2006, without a history of seizures, Mazzone experienced two seizures and was treated at Madison Memorial Hospital. It was believed that the seizures were related to medication that Mazzone was taking. Those medications were discontinued after the seizures. On April 12, 2006, Dr. Brock modified Mazzone's GAF assessment to 65/85, diagnosing Mazzone with major depressive disorder and generalized anxiety disorder. That same day, Dr. Thurman released Mazzone for a normal work schedule with one five-hour day. In Mazzone's final appointment with Dr. Thurman on May 17, 2006, Mazzone continued to experience burning of his right hand but otherwise had no significant limitations. Dr. Thurman assessed a three percent (3%) permanent partial impairment of the whole person based on abnormal sensitivity.

Between January 17, 2006, and March 10, 2006, Mazzone began sessions with Bret Wixom, a counselor. Wixon noted that Mazzone's anxiety increased with his return to work, but Wixom generally encouraged Mazzone to increase his time at work and provided coping skills. In Mazzone's last session with Wixom, Wixom noted that he had accomplished his treatment goals.

During this time Mazzone was also attending physical therapy with Deb West. In early February 2006, after having missed three appointments, West discharged Mazzone from her

---

[2] According to the DSM-IV-TR, a GAF score of 61–70 indicates "some mild symptoms." A GAF score of 71–80 indicates "if symptoms are present, they are transient and expectable reactions to psychosocial stressors; no more than slight impairment in social, occupational, or school functioning."

care; however, she noted that Mazzone's burn was well healed and Mazzone reported his condition was improving.

Mazzone first sought treatment for what he described as PTSD on October 3, 2007, when he contacted the Department of Health and Welfare Behavioral Health Services ("Behavioral Health"). During an intake evaluation, Mazzone reported ongoing symptoms, which started with his burn injury, including nightmares, crying spells, mood instability, anxiety, flashbacks, intrusive memories, sleep problems, and hypersensitivity. He attributed his sleep problems to the industrial accident. On October 11, 2007, following a week of panic attacks, Mazzone was diagnosed with general anxiety disorder, PTSD, and memory loss. Mazzone continued treatment with Behavioral Health through January 2009, where he received medications and therapy. Mazzone expressed an inability to function at work in addition to sleep disorders.

On February 21, 2008, Mazzone filed a Complaint against Texas Roadhouse and its Surety ("Respondents"). The matter was tried before a referee on December 9, 2010, the sole issue being whether Mazzone's industrial accident included a compensable psychological condition under I.C. § 72-451. On July 19, 2011, the referee found that Mazzone failed to prove he was entitled to compensation and found that Respondents' expert was more credible than Mazzone's experts because Mazzone's experts did not review his earlier medical history. The Commission approved the referee's findings on August 5, 2011. On August 24, 2011, Mazzone requested a rehearing, which was denied by the Commission on September 16, 2011. On September 27, 2011, Mazzone filed a request for reconsideration of the order denying rehearing. On October 26, 2011, before Mazzone's request for reconsideration was decided by the Commission, Mazzone filed a Notice of Appeal.

### III. ISSUES ON APPEAL

1. Whether the Commission's ruling that Mazzone did not suffer a compensable psychological injury pursuant to I.C. § 72-451 is supported by substantial and competent evidence.

2. Whether the Commission improperly relied on evidence not properly before it.

3. Whether either party is entitled to attorney fees on appeal.

### IV. STANDARD OF REVIEW

When reviewing a decision of the Industrial Commission, this Court exercises free review over questions of law. *Zapata v. J.R. Simplot Co.*, 132 Idaho 513, 515, 975 P.2d 1178,

4

1180 (1999). This Court's review with respect to questions of fact is limited to whether the Industrial Commission's findings are supported by substantial and competent evidence; if so, they will not be disturbed on appeal. *Id.* Substantial and competent evidence is relevant evidence that a reasonable mind might accept to support a conclusion. *Eacret v. Clearwater Forest Indus.*, 136 Idaho 733, 735, 40 P.3d 91, 93 (2002). This Court will not disturb the Commission's determination as to the weight and credibility of evidence unless clearly erroneous. *Zapata*, 132 Idaho at 515, 975 P.2d at 1180. "Finally, in reviewing a decision of the Commission, this Court views all the facts and inferences in the light most favorable to the party who prevailed before the Commission." *Id.* (internal quotations omitted).

The terms of Idaho's workers' compensation statute are liberally construed in favor of the employee. *Haldiman v. Am. Fine Foods*, 117 Idaho 955, 956–57, 793 P.2d 187, 188–89 (1990). However, conflicting facts need not be construed liberally in favor of the worker. *Bennett v. Bunker Hill Co.*, 88 Idaho 300, 305, 399 P.2d 270, 272 (1965).

## V. ANALYSIS

**A.** **The Commission's ruling that Mazzone did not suffer a compensable psychological injury pursuant to I.C. § 72-451 is supported by substantial and competent evidence.**

   1. *The Commission's determination that Mazzone did not suffer from a DSM-IV-TR psychological condition resulting from an industrial accident is supported by substantial and competent evidence.*

Mazzone argues the Commission's determination that he did not suffer a psychological injury is not supported by substantial and competent evidence because Mazzone presented evidence that he suffered an industrial accident, suffered vivid nightmares and anxiety after the accident, and offered a medical diagnosis of PTSD. Mazzone contends he provided sufficient evidence to demonstrate a diagnosis of PTSD under the DSM-IV-TR manual.

Respondents counter that the referee's finding was supported by substantial and competent evidence because Mazzone did not inform his medical providers who diagnosed him with PTSD of his past medical problems, Mazzone exaggerated his problems, and the opinions of Mazzone's experts lacked foundation.

The Commission's finding that Mazzone did not suffer a psychological condition compensable under I.C. § 72-451 was based almost entirely on the finding that Mazzone failed to establish that he suffered from PTSD. The referee discounted the PTSD diagnosis made by Dr. Murdock of Behavioral Health because "Dr. Murdock's opinion lacks foundation and is

5

insufficient to establish a DSM-IV-TR diagnosis of PTSD." The referee found that Dr. Murdock did not accurately account for Mazzone's psychological injury and was not "credible to demonstrate that [Mazzone] suffered a psychological injury, or that Mazzone's injury arose during the course of employment." The referee also discounted the testimony of Dr. Ostrom, the medical director at Behavioral Health, because Dr. Ostrom relied on the diagnosis of her colleague, Dr. Murdock, who diagnosed Mazzone with PTSD. The referee maintained that Dr. Ostrom inadequately reviewed Mazzone's medical psychiatric history and did not "confirm" Dr. Murdock's diagnosis of PTSD. The referee also assumed that "information [including that PTSD symptoms first arose in 2007] would have likely had a significant impact on Dr. Ostrom's opinion . . . ." The referee therefore excluded from evidence Dr. Ostrom's opinions.

The referee relied entirely on the opinion of Dr. Enright, a clinical psychologist who twice examined Mazzone. Dr. Enright concluded that Mazzone did not satisfy the criteria for a diagnosis of PTSD and may have been exhibiting exaggerated pain behaviors.

"A mental-mental claim is one in which a mental stimulus or impact results in a psychological condition." *Gibson v. Ada Cnty. Sheriff's Office*, 147 Idaho 491, 493 n.1, 211 P.3d 100, 102 n.1 (2009). Idaho Code § 72-451 bars mental-mental claims. "A physical-mental claim is one in which a mental stimulus or impact results in a psychological condition that is accompanied by a physical injury." *Id.* A physical-mental claim is compensable pursuant to I.C. § 72-451 when the following conditions are satisfied:

> (1) The injury was caused by an accident and physical injury or occupational disease or psychological mishap accompanied by resultant physical injury;
>
> 2) The injury did not arise from conditions generally inherent in every working situation or from a personnel related action;
>
> 3) Such accident and injury must be the predominant cause as compared to all other causes combined of any consequence;
>
> 4) The causes or injuries must exist in a real and objective sense;
>
> 5) The condition must be one which constitutes a diagnosis under the American Psychiatric Association's most recent diagnostic and statistics manual, and must be diagnosed by a psychologist or psychiatrist licensed in the jurisdiction in which treatment is rendered.

*Id.* "An employer takes an employee as it finds him or her; a preexisting infirmity does not eliminate a workers' compensation claim . . . ." *Spivey v. Novartis Seed Inc.*, 137 Idaho 29, 33, 42 P.3d 788, 792 (2002). "The Industrial Commission, as the factfinder, is free to determine the

weight to be given to the testimony of a medical expert." *Eacret*, 136 Idaho at 737, 40 P.3d at 95. "When deciding the weight to be given an expert opinion, the Commission can certainly consider whether the expert's reasoning and methodology has been sufficiently disclosed and whether or not the opinion takes into consideration all relevant facts." *Id.* When facts are conflicting, the Commission is not required to liberally construe the facts in favor of the worker. *See Bennett*, 88 Idaho at 305, 399 P.2d at 272.

Whether Mazzone was properly diagnosed with PTSD is a contested issue: Dr. Murdock diagnosed Mazzone with PTSD, a diagnosis upon which Dr. Ostrom relied; however, Dr. Enright found that Mazzone did not satisfy the requirements of a PTSD diagnosis. As we will discuss further, even though we determine that the referee improperly gave her own medical opinion when concluding that Dr. Murdock and Dr. Ostrom improperly found that Mazzone had PTSD; the referee is entitled to consider whether Dr. Enright's or Dr. Murdock's diagnosis was more credible. The referee was entitled to consider the methodologies of all the experts, their examination of Mazzone, their concerns with Mazzone, and their consideration of his prior psychiatric history in determining which medical opinion was most credible. It was not arbitrary for the referee to find Dr. Enright's diagnosis more credible. Dr. Enright personally examined Mazzone; he administered psychological testing; he examined Mazzone's records from his burn injuries; he examined earlier psychiatric history, and burn treatment; and he also considered whether Mazzone was exaggerating his pain.

We therefore conclude that the Commission's decision was supported by substantial and competent evidence.

*2.     Mazzone failed to demonstrate that the industrial accident was the predominant cause of any PTSD from which he might suffer.*

Idaho Code § 72-451(3) requires that "[s]uch accident and injury must be the predominant cause as compared to all other causes combined of any consequence for which benefits are claimed under this section." The Commission's articulation of the predominant cause standard is as follows:

> Although an employer takes an employee as he is, in determining the predominant cause of a psychological condition, the contribution of all of the employee's pre-accident factors must be weighed against the contribution of the industrial accident. To be the predominant cause, the work injury must be a greater cause of the psychological condition than all other causes combined.

*Smith v. Garland Constr. Serv.*, 2009 IIC 0179, at ¶ 29 (2009).

7

The Commission's articulation of the predominant factor standard is consistent with I.C. § 72-451(3): like the statute, it takes into consideration all other combined causes and compares them to the accident. The Commission properly concluded that Mazzone failed to demonstrate that his industrial accident was the predominant cause of his alleged PTSD or psychological condition. By Mazzone's own account, he suffered certain stressors earlier in life, including the still-born birth of his first child. Mazzone had a long history of psychiatric disorders prior to the industrial accident. He was treated in Arizona for severe psychological symptoms after a breakup with his girlfriend in 2002. He reported symptoms of bipolar disorder and PTSD in 2003. He sought medical assistance because he was suffering from insomnia in 2004. He was stressed by the cleft-palate and general health issues suffered by his son in 2004. Two days before the accident, Mazzone was evaluated by Dr. Brock for symptoms including sleep deprivation, difficulty concentrating, and feelings of being overwhelmed. Two days before the industrial accident, Dr. Brock assessed Mazzone a GAF score of 55/85.

Mazzone has failed to demonstrate that the industrial accident was the predominant cause of his PTSD and symptoms; particularly in light of his prior medical history and his post-incident recovery. Mazzone had a history of psychiatric disorders potentially including an earlier PTSD diagnosis after the unfortunate still-born death of his first child. He had a variety of stressors in his life that caused him anxiety and sleeplessness. It is particularly noteworthy that for nearly two years after Mazzone's industrial accident his recovery was very positive. In the months after his accident his GAF score *never* fell below the 55/85 that he went into the accident having; indeed, in his first psychiatric evaluation after the incident Mazzone was evaluated with the same GAF score. His other post-incident evaluations demonstrate that contrary to his accounts, he was coping at work, he was requesting more time, he was anxious but learning coping skills, and he was sleeping better than he alleges. Given Mazzone's positive post-incident recovery and the many other stressors that he endured before and after the accident, substantial evidence supports the Commission's determination that the predominant cause of Mazzone's condition was not the accident.

Finally, Mazzone's expert, Dr. Ostrom, noted that even though she believed his PTSD was "related to his accident," her testimony was not sufficient to establish that the accident was the predominant cause. Specifically, Dr. Ostrom testified that "[i]t's very hard in someone who

8

has multiple psychiatric issues to determine how those are interacting with one another in terms of the severity of the illness."

Thus, the Commission's findings that Mazzone did not suffer a compensable psychological condition under I.C. § 72-451 was supported by substantial and competent evidence.

**B.     The Commission's referee exceeded her role as a finder of fact.**

Mazzone argues that the Commission's referee exceeded her fact-finding role because the referee relied on evidence outside of the record and subsequently supplied her own medical opinion in disregard of the opinions of Mazzone's treating physicians. He further argues that the referee erred in considering Mazzone's prior medical history and the DSM-IV-TR manual when neither was actually admitted into evidence. Based on this information, Mazzone argues the referee gave her unqualified medical opinion.

Respondents argue that the referee did not improperly rely on the DSM-IV-TR manual because it is required by statute to investigate and rely on that manual. Respondents further argue that the referee did not err in examining Mazzone's prescription history because as finder of fact, the referee is entitled to examine and make statements of Mazzone's prescription history.

The Idaho Constitution grants the Industrial Commission authority to act as finder of fact. Idaho Const. art. 5, § 9. This Court's review is generally limited to questions of law. *Id.* However, if the findings of the Commission are not supported by "substantial, competent evidence, they are not binding or conclusive . . . ." *Dean v. Dravo Corp.*, 97 Idaho 158, 161, 540 P.2d 1337, 1340 (1975). In such instances, the findings of fact will be set aside on appeal. *Id.* We have held that the referee "must accept as true the positive, uncontradicted testimony of a credible witness, unless this testimony is inherently improbable, or rendered so by facts and circumstances disclosed at the hearing or trial." *Pierstorff v. Gray's Auto Shop*, 58 Idaho 438, 447, 72 P.2d 171, 175 (1937). This Court often requires expert testimony in matters involving medical disputes because such knowledge is frequently outside the ordinary knowledge of lay persons. *See Coombs v. Curnow*, 148 Idaho 129, 140, 219 P.3d 453, 464 (2009) (requiring expert testimony to legal causation in most medical malpractice cases).

*1.     The referee improperly interpreted the DSM-IV-TR manual.*

We first consider whether the referee erred in considering the DSM-IV-TR manual. "Strict adherence to the rules of evidence *is not* required in Industrial Commission

9

proceedings and admission of evidence in such proceedings is more relaxed." *Hagler v. Micron Tech.*, 118 Idaho 596, 598, 798 P.2d 55, 57 (1990) (emphasis in original). The policies of Industrial Commission proceedings are simplicity, accommodation of claimants, and justice. *Id.* at 599, 798 P.2d at 58. The legislature intended the industrial commission to have the "discretionary power to consider any type of reliable, trustworthy evidence having probative value . . . even though that evidence may not be admissible in a court of law." *Hite v. Kulhenak Bldg. Contractor*, 96 Idaho 70, 72, 524 P.2d 531, 533 (1974). "[I]n those areas in which the Industrial Commission possesses recognized expertise, it may in its discretion consider evidence not ordinarily admissible in a court of law." *Id.* (permitting the admission of guides prepared by experts in the field of disability compensation because the guides were trustworthy and reliable. Nonetheless, such guides must still be introduced through a witness able to testify as to its authority). This Court clarified that it was not holding "that the Industrial Commission can take notice of anything it desires. Only, that recognized treatises or works dealing with topics in which the commission possesses expertise may be admitted into evidence through witnesses to be used as substantive evidence." *Id.*

Idaho Code § 72-451(5) provides that a psychological condition must be "based on a condition sufficient to constitute a diagnosis under the terminology and criteria of the American psychiatric association's diagnostic and statistics manual of mental disorders. . . . ." The statute further requires that the diagnosis of psychological injury "must be made by a psychologist, or psychiatrist duly licensed to practice in the jurisdiction in which treatment is rendered . . . ." I.C. § 72-451(5). Idaho Code § 72-714 governs hearings in the Industrial Commission. Sub-section (3) provides that "[t]he commission, or member thereof, or a hearing officer, referee or examiner, to whom the matter has been assigned, shall make such inquiries and investigations as may be deemed necessary." I.C. § 72-714(3). This Court has interpreted this statute as permitting the Commission to demand additional evidence if it finds that satisfactory evidence on a question of material fact is lacking. *See, e.g.*, *Hartman v. Double L Mfg.*, 141 Idaho 456, 458, 111 P.3d 141, 143 (2005) (holding that statute grants the Commission the authority to "request that [the parties] present adequate evidence . . ."); *Lay v. Idaho State Sch. & Colony*, 64 Idaho 455, 462, 133 P.2d 923, 926 (1943) ("It becomes the duty of the board to make full and exhaustive inquiry, and to that end the board may not only examine any competent witness at the conclusion of his direct and cross examination upon all matters material and relevant to any issue, but it may also

10

subpoena and examine other competent witnesses.") This Court has permitted the Commission to consider authoritative, trustworthy, and reliable medical guides; however, those guides must be introduced into evidence by witnesses able to testify that the guide is the recognized authority. *Pomerinke v. Excel Trucking Transp., Inc.*, 124 Idaho 301, 306, 859 P.2d 337, 342 (1993). The Commission is not entitled to use medical guides to assess claimants and formulate its own opinions regarding a claimant's health. *See id.* (holding the Commission properly considered a medical guide because it was used merely to support expert testimony and not to assess and formulate its own impairment rating for claimant).

We conclude that the referee improperly interpreted the DSM-IV-TR manual to arrive at unqualified medical opinions. Certainly, the statute permits the referee to look at the manual and use the manual to weigh the methodology of conflicting medical experts. However, a referee is not at liberty to interpret the manual to form his or her own unqualified medical opinions. For that, a qualified witness is necessary. Here, the referee exceeded her authority and interpreted the manual to form her own medical opinion.

The referee used the DSM-IV-TR manual to raise issues relating to whether Mazzone experienced any "dread" on the first anniversary of the accident. The Commission's referee also improperly "excluded from evidence" medical opinions with which she seemingly disagreed. In so excluding the medical opinions that Mazzone had PTSD, the referee exceeded her role as a finder of fact and engaged in medical diagnosis. The referee effectively examined the criteria for PTSD in the DSM-IV-TR manual, added emphasis to characteristics she thought were most important, and applied her *own* understanding of this document to the facts before her. She expressed in her findings of fact that Dr. Murdock "diagnosed PTSD without confirming symptoms sufficient to establish that diagnosis under the DSM-IV-TR." Indeed, the referee used her own understanding of the DSM-IV-TR manual to determine that Dr. Murdock failed "to establish a DSM-IV-TR diagnosis of PTSD."

The referee excluded Dr. Ostrom's opinions because she believed that Dr. Ostrom's opinions would change if she had considered additional evidence. A referee may not undiagnose a claimant before the Commission based on the referee's own lay understanding of what the referee believes would change a qualified medical professional's diagnosis and professional opinion. Like Dr. Murdock, the referee found that Dr. Ostrom's professional opinion that Mazzone suffered from PTSD was "insufficient to establish a DSM-IV-TR diagnosis of PTSD."

11

The referee did not merely use the manual to weigh the methodologies of two qualified doctors. Rather, she used her own understanding of the manual and its requirements to determine that Dr. Murdock and Dr. Ostrom had improperly diagnosed Mazzone. Where there is both a positive and negative diagnosis between two qualified doctors, the fact finder may examine the methodologies of both physicians to determine which physician is more credible. However, to use one's own lay understanding of a medical document, which requires specialized expertise to understand and interpret, to conclude that a person with that specialized knowledge improperly made a medical diagnosis is improper.

Thus, we conclude that the referee improperly interpreted the DSM-IV-TR manual.

*2.*     *The referee improperly interpreted Mazzone's prescription history.*

We next examine whether the referee improperly relied on Mazzone's prescription history from before the industrial accident. We conclude that the referee erred in considering and drawing opinions from Mazzone's Walgreen's Pharmacy prescription history. The referee considered Mazzone's prescriptions from Walgreen's and drew opinions from those prescriptions based on what they were "commonly prescribed for." None of the medical experts testified to, or otherwise expressed an opinion regarding, Mazzone's prescription history. There was no expert who testified to the accuracy of the prescription history or why the medicine was prescribed. There is no evidence in the record indicating whether these prescriptions were prescribed for off-label uses. Indeed, the Walgreen's prescription history was not referenced at all during the hearing, or by any of the experts in this matter.[3] Unlike chart notes, the prescription history does not itself explain the medical reason for its use. The referee exceeded her authority as a finder of fact when the referee made findings regarding Mazzone's prior medical condition based on her own assessment of his prescription history. This Court has held that the Commission cannot take notice of whatever it likes and witnesses are still necessary. *See Pomerinke*, 124 Idaho at 306, 859 P.2d at 342; *Hite*, 96 Idaho at 72, 524 P.2d at 533.

Therefore, we conclude that the Commission's referee improperly relied on Mazzone's pharmacy prescription history.

*3.*     *The referee's error is harmless.*

---

[3] It is mysterious how the Walgreen's prescription history made it into the record at all since it is private information and would be protected under HIPAA. Nonetheless, it was presented to the referee but was not admitted into evidence, nor did any of the experts discuss or offer any testimony on the prescription history. The prescription history should not have been relied on by the referee.

Even though the referee improperly interpreted the DSM-IV-TR manual and Mazzone's prescription history, the referee's error was nonetheless harmless. This Court will not reverse the decision of the Industrial Commission when evidentiary errors are harmless. *See Hagler*, 118 Idaho at 58, 798 P.2d at 599. Ultimately, there were medical experts who positively and negatively diagnosed Mazzone with PTSD. The referee was entitled to look at the methodologies and opinions of the various experts to determine which expert was most credible and/or persuasive. The referee, therefore, did not err when she found Dr. Enright's conclusion that Mazzone did not suffer from PTSD more credible than the opinions of Dr. Murdock and Dr. Ostrom who concluded Mazzone did suffer from PTSD. Nor did the referee err in concluding that the industrial accident was not the predominant cause of Mazzone's condition because there was significant evidence of Mazzone's pre-incident condition.

4.      *The Commission's referee is a finder of fact.*

We hold that the Commission's referee exceeded her role as a finder of fact and engaged in medical diagnosis. Even though we determine that the error was ultimately harmless, we take this moment to reaffirm that the role of the Commission's referee is that of a finder of fact and not a medical expert. When a referee exceeds his or her role as a finder of fact and injects his or her own medical opinions into the proceeding, we are concerned that claimants who come to the Commission with a history of medical issues might not receive the most competent adjudication to which they are entitled.

Often in the area of administrative law, an administrative agency or board may have members who by education, training, or experience have acquired expertise in their particular area of administrative law. There is, however, a line between use of that expertise and the adjudicative function of resolving factual disputes in administrative proceedings. For example, the United State Supreme Court has established that administrative officers acting in a quasi-judicial capacity may not "act on their own information, as could jurors in primitive days." *Interstate Commerce Comm'n v. Louisville & Nashville R.R. Co.*, 227 U.S. 88, 93 (1913). The United States Supreme Court further held that an agency that uses its specialized knowledge as a substitute for evidence will not have its order sustained. *Baltimore & Ohio R.R. Co. v. United States*, 264 U.S. 258, 263 (1924). Simply, for an agency to rely on facts withheld from the record is a denial of due process. *Ohio Bell Tel. Co. v. Pub. Util. Comm'n*, 301 U.S. 292, 302–03 (1937). Stated another way, an agency "may not use its specialized knowledge as a substitute for

13

evidence presented at a hearing." *Kyu Son Yi v. State Bd. of Veterinary Med.*, 960 A.2d 864, 870 (Pa. Commw. Ct. 2008) (citing 42 Am. Jur. *Publ. Admin. Law* §130). An agency may, however, utilize its expertise in drawing inferences from the facts or record or to resolve conflicts in the evidence. *Radio Officers' Union, C.T.U. v. NLRB*, 347 U.S. 17, 49–50 (1954); *Travelers Indem. Co. v. Ins. Dep't*, 558 A.2d 568, 571 (Pa. Commw. Ct. 1989). As stated by the Oregon Supreme Court

> It is one thing . . . to say that an agency may employ its experience and expertise to evaluate and understand evidence and quite another to allow it to use its special knowledge as a substitute for evidence presented at a hearing. A fundamental premise of administrative law is that the quality and efficiency of the regulatory process will be enhanced by delegating authority to experienced, expert administrators. Just as fundamental, however, is the principle that factfinding in contested cases is governed exclusively by the record of the hearing.

*Drew v. Psychiatric Sec. Review Bd.*, 909 P.2d 1211, 1214 (Or. 1996). The Oregon Supreme Court went on to explain that the substantial evidence rule "loses its meaning if it is interpreted as leaving to the 'expertise' of an agency personnel, rather than to the external scrutiny of appellate courts, the critical question [of] whether the facts of the case permit the administrative choice involved." *Id.* at 1215.

It is the law in Idaho that "our [workers'] compensation law does not limit awards to workmen who, prior to the injury were in sound emotion and perfect health. Rather, an employer takes an employee as he finds him." *Wynn v. J.R. Simplot Co.*, 105 Idaho 102, 104, 666 P.2d 629, 631 (1983). When the Commission's referee is charged with making findings of fact, the referee is charged with taking an independent role as an adjudicator, must listen to the testimony of experts, and must render an impartial decision based upon the evidence in the record and the law that an employer takes an employee as he or she is found. When a finder of fact exceeds this role and engages in medical diagnosis, this Court loses confidence that the Commission's referee is not rejecting or discounting admissible and competent evidence offered by the claimant based merely on the referee's own unqualified medical opinions. *Haldiman*, 117 Idaho at 956–57, 793 P.2d at 188–189. Permitting a referee to exceed his or her role as a finder of fact undermines the legal purpose of Industrial Commission proceedings to accommodate claimants and *promote justice* in simple proceedings. *See Hagler*, 118 Idaho at 599, 798 P.2d at 58 (1990).

## C. Neither party is entitled to attorney fees.

14

Mazzone requests attorney fees on appeal pursuant to I.C. § 72-804. Respondent requests attorney fees on appeal pursuant to Idaho Appellate Rule 11.2.

Idaho Code § 72-804 permits the award of attorney fees if it is determined that an employer or its surety contested a workers' compensation claim without reasonable ground. We hold that Mazzone is not entitled to attorney fees because he is not the prevailing party and was not entitled to compensation.

Idaho Appellate Rule 11.2 provides as follows:

> Every notice of appeal, petition, motion, brief and other document of a party represented by an attorney shall be signed by at least one (1) licensed attorney of record of the state of Idaho, in the attorney's individual name, whose address shall be stated before the same may be filed. A party who is not represented by an attorney shall sign the notice of appeal, petition, motion, brief or other document and state the party's address. The signature of an attorney or party constitutes a certificate that the attorney or party has read the notice of appeal, petition, motion, brief or other document; that to the best of the signer's knowledge, information, and belief after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. If the notice of appeal, petition, motion, brief, or other document is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the notice of appeal, petition, motion, brief or other document including a reasonable attorney's fee.

I.A.R. 11.2. An appeal is brought without reasonable basis where the appellant simply asks this Court to "reweigh the evidence presented to the Commission, and implicitly, to substitute our view of the evidence for that of the commission." *Gibson v. Ada Cnty. Sheriff's Office*, 147 Idaho 491, 497, 211 P.3d 100, 106 (2009).

We hold that Respondents are not entitled to attorney fees on appeal because this case was brought for reasons beyond merely asking this Court to reweigh the evidence. Indeed the referee improperly drew her own medical conclusions from that record. However, that error was harmless. Thus, neither party is entitled to attorney fees on appeal.

## VI. CONCLUSION

15

We affirm the Commission's determination that Mazzone did not suffer a compensable psychological injury pursuant to I.C. § 72-451. Costs on appeal are awarded to Respondents as the prevailing party.

Chief Justice BURDICK, Justices EISMANN, J. JONES and HORTON CONCUR.