J. JONES, Chief Justice,
dissenting,
I dissent because the Industrial Commission made two errors of law in its decision. First, the Commission erroneously concluded there was a 51% proof requirement in order to meet the predominant cause standard under Idaho Code section 72-451(3). Second, despite its claim to the contrary, the Commission improperly disregarded the positive, uneontradieted testimony of Gerdon’s . family members and friends who testified as to his mental condition prior to the accident. Based upon these legal errors, I would vacate the Commission’s decision.
Where an injured worker seeks worker’s compensation benefits for a psychological injury resulting from a covered accident, the “accident and injury must be the predominant cause as compared to all other causes combined of any consequence where benefits are claimed.” I.C. § 72-451(3). There is no exact percentage requirement under the statute. Thus, an injured worker need only show that the accident predominates by the slightest amount over 50%. Presumably, the worker is entitled to benefits if the accident-caused injury predominates by 50.001% or more. In this case, Dr. Calhoun, the Respondents’ expert, opined that the accident had a 50% causal effect for Gerdon’s injury. Thus, based solely upon Dr. Calhoun’s opinion, Gerdon may have fallen about .001% short in his proof.
The Commission found that Gerdon:
makes a valiant argument encouraging the Referee and the Commission to find that, within the 50% of Claimant’s current depressive state that Dr. Calhoun attributes to preexisting hostility, anger, resentment and dysthymia, at least 1% is attributable to his industrial injury and, thus, Claimant has proved the 51% necessary to meet the predominant factor standard. Such a holding, however, would require the rejection of Dr. Calhoun’s well-founded, clearly stated opinion, which the evidence in the record does not justify.
It might first be observed that there is no evidence in the record that would require the rejection of Dr. Calhoun’s opinion attributing a 50% causal effect for Gerdon’s psychological injury to the accident. However, there is evidence in the record to justify supplementing, but not rejecting, the 50% causal factor to which Dr. Calhoun opined. More importantly, the Commission appears to assume that the standard of proof necessary to meet the predominant cause standard is 51%. There is no such requirement in the statute.
It is obvious that the Commission’s decision was based solely on the opinion testimony of Dr. Calhoun. According to the Commission:
Dr. Calhoun opined that the industrial injury of June 13, 2008 is not the predominant cause of Claimant’s present depressed state. Instead, it is 50% due to his chronic pain from his industrial injuries, and 50% due to Claimant’s preexisting personality traits of hostility, anger, resentment, and dysthymia, which were consistently identified by psychology testing over time.
This is cutting it fairly fine. The Commission treated Dr. Calhoun’s testimony as if it were an immutable mathematical calculation and apparently assumed that psychological supposition based on after-the-fact testing is capable of pinpoint accuracy. I think we know that is not true.[2] Information unknown to Dr. *342 Calhoun regarding personality traits exhibited by Gerdon prior to his accident could cause a slight variation in his opinion testimony. For example, if Dr. Calhoun was unaware of Gerdon’s state of mind and psychological condition prior to the accident, the predominant cause could be shifted in Ger-don’s favor. Based upon evidence that the Commission did not consider, but which our previous decisions required it to consider, Gerdon should likely have prevailed.
According to the Commission, Dr. Marsh, Gerdon’s medical expert, “opined that Claimant’s industrially related chronic pain is the predominant cause of his depression. He based his opinion on his history of treating Claimant’s pain and Claimant’s lack of any prior treatment for psychological conditions.” The Commission found Dr. Marsh to be “qualified to opine regarding Claimant’s condition,” and further' found his opinion to be “credible, but ... limited by its narrow foundation.” However, because Dr. Marsh, a medical doctor, is a pain specialist who “does not treat psychological conditions,” the Commission determined that his opinion “should be given little weight.” Actually, the Commission discarded Dr. Marsh’s opinion entirely, giving it no weight, as evidenced by its sole reliance on Dr. Calhoun’s 60-50 assessment.
Let’s assume that Dr. Marsh’s testimony was completely without merit and entitled to no weight whatsoever. The only testimony of record before the Commission regarding Gerdon’s pre-accident mental state was that of Gerdoris mother, wife, and friends. The Commission found:
Claimant’s mother, wife, and friends all testified that Claimant was an optimistic, fun-loving person with no history of anger before his industrial accident, but he became withdrawn, hostile, self-pitying, and unlikeable afterward. Their testimony regarding the change in Claimant’s personality following his industrial accident is undisputed and persuasive.
However, the Commission concluded that “[t]he observations of Claimant’s mother, wife, and friends are inadequate to overcome Dr. Calhoun’s opinion as to Claimant’s preexisting psychological condition.” The Commission was correct in stating that this testimony could not “overcome” Dr. Calhoun’s testimony. It is not suggested that the testimony of friends and family should “overcome” or result in “rejection” of Dr. Calhoun’s opinion. Rather, his expert opinion establishes that 50% of Gerdoris psychological injury resulted from the industrial accident. This established a floor and the testimony of friends and family certainly should have been seen as supplementing Dr. Calhoun’s testimony, particularly because Ger-doris witnesses filled in for gaps in Dr. Calhoun’s knowledge.
During oral argument before the Court, Respondents’ attorney acknowledged that Dr. Calhoun did not have the benefit of the testimony of Gerdoris witnesses when he made his 50-50 determination and that it would have been helpful if Dr. Calhoun had had that knowledge when he formulated his opinion. Dr. Calhoun acknowledged that Ger-doris friends would likely have an inkling of his pre-accident psychological state “by just being around him.” The following testimony appears in Dr. Calhoun’s deposition:
Q. [Gerdoris counsel] One last thing just to touch on some of the preexisting conclusions that you made. Is it possible for you to diagnosis someone with that, or is it possible for you to not see that in someone if you’re close to them?
And to make my question a little more clear: If I’m a good friend of [Gerdoris], do I know that he has anger and hostility and resentfulness just by being around him?
A. [Dr. Calhoun] Oh, I’m sure you would, yes. I’m sure there were times where he would lose his temper around friends or family, or where there times when he would show subtle depression, that kind of thing.
Yet, Dr. Calhoun was not given privy to the sworn testimony of Gerdoris family and *343 friends as to the absence of anger, hostility and resentfulness on the part of Gerdon prior to the accident. Dr. Calhoun’s opinion was based solely on testing which took place well after the accident. The Commission did have privy to the testimony of Gerdon’s witnesses but totally disregarded it in all respects, not even seeing it as a potential infirmity in Dr. Calhoun’s opinion. The Commission claimed that it took this testimony into, account, but in reviewing the decision there is no hint that this is trae. The Commission’s decision hinged solely on the opinion of one witness to the exclusion of all other’evidence.
The Commission aná this Court have often discounted medical opinions by experts who do not have knowledge of a worker compensation claimant’s pre-injury history. For example, in Mazzone v. Texas Roadhouse, Inc., 154 Idaho 750, 756, 302 P.3d 718, 724 (2013), the Court affirmed a Commission decision where the referee discounted the testimony of a claimant’s medical expert who “inadequately reviewed [the claimant’s] medical psychiatric history.” In determining whether the claimant in that case demonstrated that the industrial accident was the predominant cause of a psychological injury, this Court examined the claimant’s account of his pre-accident psychological condition, as well as other evidence of his'pre-accident medical stressors. Id. at 757, 302 P.3d at 725. In my opinion, we should do likewise in this case. That is, the Court should use Dr. Calhoun’s 50% causation figure as a starting point or floor and determine whether any evidence that was ignored by the Commission would tend to provide the additional .001% or so factor necessary 'to support the predominant causation of his injury.'
This Court has repeatedly held that the uncontradieted testimony of a credible witness should not be disregarded. In a 1937 worker’s compensation case, Pierstorff v. Gray’s Auto Shop, 58 Idaho 438, 447-48, 74 P.2d 171, 175 (1937), the Court said:
The rale applicable to all witnesses, whether parties or interested in the event of an action, is, that either a board,- court, or jury must accept.as.true the positive,-un-contradieted testimony of a credible -witness, unless his testimony is inherently improbable, or rendered so by facts and circumstances disclosed at the hearing or trial.... In Jeffrey v. Trouse, 100 Mont. 538, 50 P.2d 872, 874 [(1-935)], it is held that neither the trial court nor a jury may arbitrarily or capriciously disregard the testimony, of a witness unimpeached by any of the modes known to the law, if such testimony does not exceed probability.
See, also, Mazzone at 758, 302 P.3d at 728. The Commission obviously ignored the testimony of Gerdon’s witnesses that he exhibited no anger or hostility prior to the accident, which Dr. Calhoun conceded they would have observed just by being around him. Dr. Calhoun did not have the benefit of this evidence in making his 50-50 assessment, having therefore to rely solely on his after-the-fact testing.
The Commission incorrectly portrayed this case as one where it had to believe either Dr. Calhoun, on the one hand, or Gerdon’s witnesses, on the other. That is, even though Dr. Marsh and Gerdon’s other witnesses were credible, they could not be believed because that would require the rejection or overcoming of Dr. Calhoun’s testimony. That is not the case. Dr. Calhoun testified that 50% of Gerdon’s psychological injury was attributable to the accident. Dr. Marsh testified that the accident was the predominant cause. Ger-don and his friends and family testified likewise. The friends and family filled a gaping hole in Dr. Calhoun’s knowledge of Gerdon’s pre-accident history, providing direct, undisputed, and persuasive evidence of Gerdon’s pre- and post-accident mental condition. This is not a situation where the testimony was at such odds that you had to believe either one side or the other, but not both.
Neither is this case analogous to a case in the civil arena under Idaho’s comparative negligence statute where a plaintiff is denied recovery based on a 50-50 decision by the trier of fact. The situations are not comparable. The fact-finder in a comparable negligence case makes the decision based upon consideration of all of the evidence, not where as here, the decision hinges solely on the testimony of a single witness, to the exclusion of all other- evidence. Further, in the comparative negligence setting, there is *344 no public policy favoring compensability in the event of doubt, as there is in the worker’s compensation setting. As the Commission stated in its decision:
The provisions of the Workers’ Compensation Law are to be liberally construed in favor of the employee. Haldiman v. American Fine Foods, 117 Idaho 955, 956, 793 P.2d 187, 188 (1990). The humane purposes which is serves leave no room for narrow, technical construction. Ogden v. Thompson, 128 Idaho 87, 88, 910 P.2d 759, 760 (1996). However, the Commission is not required to construe facts liberally in favor of the worker when evidence is conflicting. Aldrich v. Lamb-Weston, Inc., 122 Idaho 361, 363, 834 P.2d 878, 880 (1992).
As noted above, the Commission here saw more conflict in the evidence than really existed. The Haldiman and Ogden principles are often stated in Commission decisions, but less often observed. I would vacate the decision in this case and remand the matter back to the Commission.
Justice Pro Tem KIDWELL concurs.

. This Court recognized the “nonconclusiveness of psychiatric testimony" in State v. Myers, 94 Idaho 570, 576, 494 P.2d 574, 580 (1972), where the Court observed that psychiatric opinion testi *342 mony does not appear to be "an exact science with regard to uniformity of theories, diagnoses and conclusions among its practitioners,” so as to make such testimony binding upon a trier of fact. Although Dr. Calhoun is a psychologist, instead of a psychiatrist, the same observation would hold true for psychological testimony.