r, Chief Justice.
Joseph Talbot worked at Desert View Care Center (“Desert View”) as a nurse and was discharged due to a Facebook post that Desert View found violated its Social and Electronic Media Conduct Policy (“Social Media Policy”). Talbot applied for unemployment benefits, and an Idaho Department of Labor Appeals Examiner awarded him benefits. The Idaho Industrial Commission reversed, concluding that Talbot engaged in employment-related misconduct. Talbot appeals, arguing that Desert View never communicated its Social Media Policy to him. We affirm the Industrial Commission’s decision.
I. FACTUAL AND PROCEDURAL BACKGROUND
Desert View employed Talbot as a full-time licensed practical nurse from July 5, 2012, until February 2, 2013. After a shift in January 2013, Talbot posted the following on Facebook:
Ever have one of those days where you’d like to slap the ever loving bat snot out of a patient who is just being a jerk because they can? Nurses shouldn’t have to take abuse from you just because you are sick. In fact, it makes me less motivated to make sure your call light gets answered every time when I know that the minute I step into the room I’ll be greeted by a deluge of insults.
A nursing professor who was one of Talbot’s Facebook friends saw the post and e-mailed Desert View the next day to express her concerns about resident safety. Talbot said he was just frustrated and venting.
Desert View had a Social Media Policy. A portion of that policy stated that employees are “to treat physicians, providers, vendors, conservators, regulators, competitors, fellow employees, managers, and the family members of our patients with respect electronically, as well as in-person.” Additionally, “employees will at all times avoid slanderous, vulgar, obscene, intimidating, threatening or other ‘bullying’ behavior electronically towards any of the groups identified above or towards other facility stakeholders.” Although Talbot states that he never read the Social Media Policy, he acknowledged receiving this policy and agreeing to its requirements when he signed for his paycheck on September 10, 2012. Desert View discharged Talbot on February 2, 2013, for violating the Social Media policy with his Face-book post.
Talbot submitted a claim for unemployment benefits. The Idaho Department of Labor (“IDOL”) initially denied him eligibility for those benefits because Desert View discharged Talbot for violation of its Social Media Policy. Talbot appealed, and an IDOL Appeals Examiner heard the case by telephone. Talbot contends that during that hearing he mentioned that Desert View held a staff meeting where a policy was discussed, but he thought that policy was only about cell phone use and did not mention Facebook. The IDOL found Talbot “would never harm a patient. He was venting.” It also found that the policy was “vague in regards to Face Book.” The IDOL concluded that Desert View did not discharge Talbot for employ *520 ment-related misconduct, reversed the eligibility denial, and allowed Talbot unemployment benefits.
Desert View appealed the IDOL’S decision to the Idaho Industrial Commission. The Commission conducted a de novo review of the record, relied on an audio recording of the IDOL hearing, and reviewed exhibits admitted during the IDOL hearing. The Commission then adopted the IDOL Appeals Examiner’s findings of fact. The Commission found that under the standards of behavior test Desert View had communicated its Social Media Policy to Talbot and Talbot’s conduct violated that policy’s standard. Thus, the Commission concluded that Desert View had discharged Talbot for employment-related misconduct. The Commission then reversed IDOL’s decision and denied Talbot’s unemployment benefits.
Talbot filed a motion to reconsider, arguing that Desert View had not shown that it effectively communicated its Social Media Policy to him because the staff meeting where Desert View discussed the policy only specifically noted cell phone use. The Commission stated that the policy was discussed at a staff meeting and that Talbot acknowledged the policy with his signature. The Commission also noted that Desert View’s policy clearly stated that it was not limited to any one social media outlet. Thus, the Commission denied the motion to reconsider. Talbot timely appealed.
II. STANDARD OF REVIEW
This Court exercises free review over questions of law when we review Industrial Commission decisions. Adams v. Aspen Water, Inc., 150 Idaho 408, 412, 247 P.3d 635, 639 (2011). We only disturb the Commission’s findings of fact if those findings are clearly erroneous, which means they are not supported by substantial and competent evidence. Henderson v. Eclipse Traffic Control & Flagging, Inc., 147 Idaho 628, 631, 213 P.3d 718, 721 (2009). Evidence is substantial and competent when it is “relevant evidence that a reasonable mind might accept to support a conclusion.” Adams, 150 Idaho at 412, 247 P.3d at 639 (quoting Henderson, 147 Idaho at 631, 213 P.3d at 721). We will not re-weigh the evidence or determine whether we would have drawn different conclusions from the evidence. Rigoli v. Wal-Mart Assocs., Inc., 151 Idaho 707, 710, 263 P.3d 761, 764 (2011).
We note that Talbot did not include a recording or transcript of the IDOL hearing as part of the record on appeal. An appellant has the burden to provide a sufficient record to substantiate his claims on appeal. Goodman Oil Co. v. Scotty’s Duro-Bilt Generator, Inc., 147 Idaho 56, 59, 205 P.3d 1192, 1195 (2009). When the appellant provides a record that is inadequate to review his claims, we will not presume error below. W. Cmty. Ins. Co. v. Kickers, Inc., 137 Idaho 305, 306, 48 P.3d 634, 635 (2002). Here, Talbot did not provide any record of the IDOL hearing, and we do not presume error in the Commission’s findings of fact.
III. ANALYSIS
A. Because Talbot provided an insufficient record, we affirm the Commission.
A person is not entitled to unemployment benefits when “he was discharged for misconduct in connection with his employment.” I.C. § 72-1366(5). The burden is on the employer to prove by a preponderance of the evidence that the discharge was for employment-related misconduct. Adams, 150 Idaho at 413, 247 P.3d at 640. Employment-related misconduct is (1) a willful, intentional disregard of the employer’s interest; (2) a deliberate violation of the employer’s reasonable rules; or (3) a disregard of a standard of behavior which the employer has a right to expect of his employees. Id.; IDAPA 09.01.30.275.02. The Commission considers all three grounds to determine whether an employee’s discharge was due to employment-related misconduct. Dietz v. Minidoka Cnty. Highway Dist., 127 Idaho 246, 248, 899 P.2d 956, 958 (1995).
The Commission concluded that Talbot committed employment-related misconduct under the standards of behavior test. The Commission held that under that test, Desert View had communicated its Social Media Pol *521 icy to Talbot and Talbot’s conduct violated the policy’s standard. Talbot argues Desert View did not meet the standards of behavior test because it never communicated the Social Media Policy to him. Because the Commission based its decision on the standards of behavior test, only that test is at issue.
Whether a claimant disregarded the employer’s standards of behavior is a factual question for the Commission. Lang v. Ustick Dental Office, P.A., 120 Idaho 545, 548, 817 P.2d 1069, 1072 (1991). The test requires that the employer prove that (1) the employee’s conduct fell below the employer’s expected standard of behavior; and (2) the employer’s expectations were objectively reasonable under the circumstances. Adams, 150 Idaho at 413, 247 P.3d at 640; IDAPA 09.01.30.275.02(c). The test’s first prong addresses what the employer subjectively expected. Adams, 150 Idaho at 413, 247 P.3d at 640. The second prong considers whether the employer’s expectations were reasonable under the circumstances. Id. An expectation is reasonable under the circumstances when it is communicated to the employee, unless that expectation flows naturally from the employment relationship. Id. This communication standard “is higher and more specific than what would be necessary simply to discharge an employee for cause.” Harris v. Elec. Wholesale, 141 Idaho 1, 4, 105 P.3d 267, 270 (2004).
Here, the first prong is met because Desert View had an expectation that its nurses would not make threatening statements about a patient on Facebook, which is supported by its Social Media Policy. That policy specifically prohibits “slanderous, vulgar, obscene, intimidating, threatening or other ‘bullying’ behavior electronically” towards facility stakeholders. Talbot insists that his post was not threatening because it was a rhetorical statement meant to initiate discussion. Talbot’s view of the post is plausible. However, it appears that Desert View found Talbot’s post to be a threat, and thus it fell below the subjective expectations Desert View established in its policy. Talbot provided no transcript or recording of his hearing to this Court. As a result, Talbot did not meet his burden to provide a record sufficient to support his claims. We cannot assume error below without a proper record on appeal. City of Coeur d’Alene v. Simpson, 142 Idaho 839, 844, 136 P.3d 310, 315 (2006). Therefore, we find that Desert View met the standards of behavior test’s first prong.
As to the second prong, the Commission concluded Talbot’s signed acknowledgement that he had received and agreed to the Social Media Policy was evidence Desert View communicated its policy to Talbot. Talbot argues that Desert View did not communicate its Social Media Policy to him and did not prove this by a preponderance of the evidence. Talbot states his acknowledgement was a mistake. Talbot contends that the staff meeting he acknowledged in the IDOL hearing was only about the use of cell phones on company property. Again, this factual dispute cannot be addressed because the record is inadequate to rebut the Commission’s findings and we do not presume error below. Talbot did not provide the IDOL hearing’s transcript or audio recording, so we are bound to the IDOL and Industrial Commission’s findings of fact and do not presume error in those facts.
Although Talbot stated that the staff meeting only mentioned cell phone use and that he did not know he was agreeing to the Social Media Policy when he signed for his paycheck, the Commission still determined that he acknowledged the policy with his signature. That signature attested that Talbot had “received the updated Social and Electronic Media policy and agree[d] to the requirements of that policy.” Again, Talbot’s knowledge of the policy is a factual issue decided by the Commission. No recording or transcript of the hearing is before this Court. While the IDOL concluded the Social Media Policy was “vague in regard to Face Book,” the Commission noted in its Order Denying Reconsideration that Desert View’s policy was discussed at a staff meeting and that the policy’s text clearly mentions Facebook. The Commission already weighed the evidence and found that Desert View communicated the policy to Talbot. Without a proper record on appeal, we must assume substantial competent evidence supports the decision. Fritts v. Liddle & Moel *522 ler Const., Inc., 144 Idaho 171, 174, 158 P.3d 947, 950 (2007). As we have no other evidence, the Commission’s decision is correct.
Talbot additionally argues his conduct was not willful, he had no bad intent, and he did not mean to harm anyone. He cites to the IDOL decision to support this argument. However, under the standards of behavior test “there is no requirement that the claimant’s conduct be willful, intentional, or deliberate. The claimant’s subjective state of mind is irrelevant.” IDAPA 09.01.30.275.02(c).
The fact that Talbot had never done this before also does not change the analysis. This Court has held that “[a] single incident of comparatively nonserious disrespect by complaining and arguing is not misconduct.” Avery v. B & B Rental Toilets, 97 Idaho 611, 615, 549 P.2d 270, 274 (1976). However, here the Commission could have found Talbot’s conduct went beyond a simple complaint that showed non-serious disrespect. The Commission found Talbot violated the policy against electronically intimidating, threatening, or bullying behavior towards a facility stakeholder. Talbot posted a statement for many to see that indicated he would not respond to patient’s call button in certain cases. This could be interpreted as putting his intent toward patient care in question. The professor who read this post questioned its content enough that she felt compelled to e-mail the facility, which is evidence to support the Commission’s finding. We affirm the Industrial Commission’s decision that Desert View discharged Talbot for employment-related misconduct.
IV. CONCLUSION
We affirm the Commission’s decision. Costs to the Commission.
Justices EISMANN and HORTON concur.