# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 43234-2015

| | | |
|---|---|---|
| JOSEPH GERDON, | ) | |
| | ) | Boise, April 2016 Term |
| Claimant-Appellant, | ) | |
| | ) | 2016 Opinion No. 59 |
| v. | ) | |
| | ) | Filed: May 27, 2016 |
| CON PAULOS, INC., Employer, and | ) | |
| LIBERTY NORTHWEST INSURANCE | ) | Stephen W. Kenyon, Clerk |
| CORPORATION, Surety, | ) | |
| | ) | |
| Defendants-Respondents. | ) | |
| | ) | |

Appeal from the Industrial Commission of the State of Idaho.

The order of the Industrial Commission is <u>affirmed</u>.

Daniel J. Luker, Goicoechea Law Offices, Chtd., Boise, argued for appellant.

Joseph M. Wager, Law Offices of Kent W. Day, Boise, argued for respondents.

---

EISMANN, Justice.

This is an appeal from an order of the Industrial Commission holding that a worker injured in an industrial accident had failed to prove that he was entitled to benefits for psychological care. Because the Commission's decision was based upon its constitutional right to weigh the evidence and determine the credibility of conflicting expert opinions, we affirm the order of the Commission.

## I.
## Factual Background.

On June 13, 2008, Joseph Gerdon was seriously injured in a motor vehicle accident that arose out of and in the course of his employment. He was a passenger in a vehicle being driven by a coworker, who drove off the road. As a result of that accident, the Industrial Commission determined on October 15, 2012, that Mr. Gerdon suffered a left ankle fracture, complex regional

pain syndrome, a disk herniation at L3-L4, bilateral osteoarthritis, and temporary thoracic spine pain that had healed by the time of the hearing. He was awarded benefits by the Commission.

On July 7, 2014, Mr. Gerdon requested a hearing to determine whether he was also entitled to benefits for a compensable psychological injury. That issue was heard on September 5, 2014, before a referee, who issued proposed findings of fact, conclusions of law, and a recommendation that Mr. Gerdon had failed to prove that he was entitled to additional psychological care. The Commission adopted the referee's proposed findings of fact and conclusions of law and issued an order that Mr. Gerdon had failed to prove he was entitled to additional psychological care. He then appealed to this Court.

## II.
### Did the Commission Err in Finding That Mr. Gerdon Had Failed to Prove He Was Entitled to Benefits for Psychological Care?

"Our jurisdiction in appeals from decisions of the Industrial Commission in worker's compensation cases is limited to a review of questions of law." *Tarbet v. J.R. Simplot Co.*, 151 Idaho 755, 758, 264 P.3d 394, 397 (2011); *accord* Idaho Const. art. V, § 9. We are "constitutionally compelled to defer to the Industrial Commission's findings of fact where supported by substantial and competent evidence." *Teffer v. Twin Falls School Dist. No. 411*, 102 Idaho 439, 439, 631 P.2d 610, 610 (1981). "Whether its factual findings are supported by substantial and competent evidence is a question of law." *Fife v. Home Depot, Inc*., 151 Idaho 509, 513, 260 P.3d 1180, 1184 (2011). "Substantial and competent evidence is 'relevant evidence which a reasonable mind might accept to support a conclusion.' The Commission's conclusions on the credibility and weight of evidence will not be disturbed unless the conclusions are clearly erroneous." *Vawter v. United Parcel Serv., Inc.*, 155 Idaho 903, 907, 318 P.3d 893, 897 (2014).

The compensability of psychological injuries, disorders, and conditions is governed by Idaho Code section 72-451. At issue in this case was the statutory requirement that "[s]uch accident and injury must be the predominant cause as compared to all other causes combined of any consequence for which benefits are claimed under this section." I.C. § 72-451(3).

The psychological condition at issue was Mr. Gerdon's depression. It was undisputed that he was suffering from depression and that the industrial accident was a cause of the

2

depression. The issue was whether it was the predominant cause. Both sides presented expert medical testimony, and the referee found that the expert presented by the Defendants was more credible on that issue than the expert presented by Mr. Gerdon. Therefore, the referee found that Mr. Gerdon had failed to prove entitlement to benefits for psychological care. The Commission agreed and adopted the referee's proposed findings of fact and conclusions of law.

To support his claim, Mr. Gerdon presented the deposition testimony of Daniel Marsh, M.D. He graduated from medical school in 1997 and then completed a four-year residency in physical medicine and rehabilitation. He next completed a fellowship in spine and sports medicine. Since then, his medical practice has focused on chronic pain and the spine. He is certified by the American Board of Physical Medicine and Rehabilitation in physical medicine and rehabilitation and in pain medicine. Mr. Gerdon became a patient of Dr. Marsh on January 19, 2011, and Dr. Marsh had seen him regularly since then.

When asked whether there was a connection between the accident and Mr. Gerdon's depression, Dr. Marsh answered, "I think there's a direct link between his work injury and his psychological situation." When asked, "How so?" Dr. Marsh responded, "I think that his depression and anxiety are related to his injury, more probably than not." He was then asked what was the predominant cause of the depression and anxiety, and Dr. Marsh described various activities Mr. Gerdon could no longer do and stated that "[h]is whole life has been completely turned upside down, and it's all limited by pain." When asked again what was the cause of Mr. Gerdon's mental state, Dr. Marsh stated, "The cause is ultimately his chronic pain and his work-related injury."

The Defendants presented the deposition testimony of Robert Calhoun, Ph.D. He received a bachelor's degree in psychology and anatomy, a master's degree in clinical psychology, and a doctoral degree in clinical psychology. He then completed an internship in neuropsychology and pain management. At the time of his deposition, he was the neuropsychologist director of the brain injury and stroke programs at Saint Alphonsus Regional Medical Center; was a consulting psychologist for the WorkSTAR program, where injured workers are rehabilitated; and maintained a private practice. About half of his practice consisted of treating pain patients. He had been working with worker's compensation patients for about twenty years. Mr. Gerdon was referred to the WorkSTAR program, where Dr. Calhoun evaluated him on April 22, 2009. He evaluated Mr. Gerdon again on May 14, 2010, and on July

31, 2014. The first and last evaluations included psychological testing. Dr. Calhoun also met with Mr. Gerdon four times while he was in the WorkSTAR program. He had also reviewed Dr. Marsh's records regarding his treatment of Mr. Gerdon.

Dr. Calhoun testified that the psychological tests that he administered to Mr. Gerdon were objective tests to assess personality makeup, coping skills, and patterns over time. He interpreted the patterns as showing, prior to his injury, that Mr. Gerdon was a hostile individual[1] with patterns of mistrust and cynicism, that he had anger issues, that he had pervasive anhedonia and was prone to depression, and that he was at high risk to over-report his psychological and pain symptoms as a way to make a plea for help and to control others. He explained that due to Mr. Gerdon's personality style, he had limited coping skills and, as a result, had a psychological reaction that was out of proportion to the stimulus. In addition, he testified that due to Mr. Gerdon's personality traits, he would not trust his doctors and therapists enough to respond to their efforts to help him. He further testified that in his opinion, Mr. Gerdon probably would have required psychological treatment along the way if he had not had the industrial accident. He stated that Mr. Gerdon had significant psychological stressors in his life that were unrelated to the accident, which were his father abandoning him, his brother committing suicide, and his wife being chronically ill. With respect to the predominant cause of Mr. Gerdon's depression, Dr. Calhoun stated, based upon the testing and his clinical evaluation, that "Mr. Gerdon has pain and does have a pain disorder from his injury, and that it was contributing 50 percent of his depression." As to the other fifty percent, Dr. Calhoun stated, "I also looked at Mr. Gerdon's personality traits, that preexisted the injury, of hostility, anger, resentment, and the dysthymia, which was contributing to 50 percent of his depression." Dr. Calhoun concluded that it was more probable than not that "the industrial injury of June 13, 2008 is not the predominant factor, above all others combined, causing his current depression."

The referee found: "Dr. Calhoun's opinions are credible and well-supported by his clinical experiences with Claimant, as well as his testing results over time. Dr. Marsh's opinion

---

[1] Dr. Calhoun explained what he meant by "anger" and "hostility" as follows:

> Anger is more the emotional state of, you know, being upset, being highly frustrated, angry.
> Hostility is more a cognitive set, a cognitive component to anger, so that the individual has difficulty trusting others, seeing good in others, looks at the glass as being half empty frequently, and again, just difficulty trusting that others want to help them or be supportive of them.

4

is credible, but it is limited by its narrow foundation." Dr. Marsh had not read Dr. Calhoun's report, nor did he do any psychological testing. The referee found that Dr. Marsh "was unaware of any psychological testing Claimant has undergone, or what those tests may have indicated." The referee stated that Dr. Marsh's opinion lacked depth of information about Mr. Gerdon's preexisting psychological condition. The referee explained that Dr. Marsh had assumed that Mr. Gerdon was at no higher risk than other chronic-pain patients to develop depression because he had not received psychological treatment prior to the injury. The referee found that Dr. Calhoun's undisputed analysis of Mr. Gerdon's preexisting psychological condition showed that he was at a higher risk for depression. Finally, the referee found that Dr. Marsh used the wrong standard for evaluating whether the industrial accident was the predominant cause of Mr. Gerdon's depression. The referee stated that Dr. Marsh incorrectly believed that "Idaho workers' compensation law 'takes a claimant as found' in regard to psychological treatment, leading him to conclude that the industrial injury was the predominant cause of [Mr. Gerdon's] depression without the need to further assess [Mr. Gerdon's] preexisting condition." The determination of predominant cause requires consideration of all other causes combined, including preexisting psychological conditions and other stressors. *Mazzone v. Texas Roadhouse, Inc.*, 154 Idaho 750, 757, 302 P.3d 718, 725 (2013). The Commission adopted the referee's proposed findings of fact.

On appeal, Mr. Gerdon's counsel first challenges the opinion of Dr. Calhoun by misquoting him. During Dr. Calhoun's deposition, the following exchange occurred:

Q. If I'm a good friend of Joe's, do I know that he has anger and hostility and resentfulness just by being around him?
A. Oh, I'm sure you would, yes. I'm sure there were times where he would lose his temper around friends or family, or there were times when he would show subtle depression, that kind of thing.
He also had, you know, lost a brother to suicide, his father abandoned him; so he had significant psychosocial stressors in his background, too, that I'm not sure he ever dealt with in formal psychological treatment.

Mr. Gerdon's counsel changed the first part of Dr. Calhoun's statement to say that "there were times when he would show *substantial* depression" rather than "*subtle* depression." He admitted during oral argument that this was not a typographical error.

Based upon that misquote, Mr. Gerdon's counsel first stated, "Dr. Calhoun found that in his opinion the industrial injury and the pre-existing personality traits were exactly evenly the

cause of Gerdon's substantial depression." After misquoting Dr. Calhoun, Mr. Gerdon's counsel argues:

> Dr. Calhoun's opinion is based on a before 2008 versus after 2008 analysis, where, based on his testing and evaluation and he was "sure" that the Appellant would exhibit "substantial" evidence of pre-existing depression to those around him prior to the 2008 industrial injury. This is not born out by the record. In addition to the Campbells, neither Joe's wife nor his mother identified "substantial" pre-existing depressive episodes. . . .
> . . . .
> This was discussed in detail above regarding the demonstrable certainty of the existence of "substantial" pre-existing depression and other similar conditions. Due to the unrebutted testimony provided by the Campbells and the Appellant's wife and mother, this conclusion that Dr. Calhoun drew from the testing he administered was clearly erroneous.

Obviously, an argument based upon misquoting Dr. Calhoun does not show that the Commission erred in finding that his testimony was credible.

Mr. Gerdon's counsel also contends that the Commission made contradictory findings regarding the cause of Mr. Gerdon's depression. The Commission found that his "mother, wife, and friends all testified that [he] was an optimistic, fun-loving person with no history of anger before his industrial accident, but he became withdrawn, hostile, self-pitying, and unlikable afterward" and that their testimony "regarding the change in [Mr. Gerdon's] personality following his industrial accident is undisputed and persuasive." Mr. Gerdon's counsel contends that these findings cannot be reconciled with the conclusion that the industrial accident was not the predominant cause of Mr. Gerdon's depression.

The error in this argument is that the issue is not whether the industrial accident was *a* cause of his depression. The issue is whether it was the *predominant* cause. In addition to conducting the psychological testing of Mr. Gerdon, Dr. Calhoun had four clinical sessions with him while he was in the WorkSTAR program. In order to form his opinion regarding causation, Dr. Calhoun reviewed Mr. Gerdon's medical records; discussed with him his psychosocial history, what was going on in his life, and what stressors he may have; evaluated the behavioral aspects of Mr. Gerdon's pain problem; and conducted a diagnostic interview mental status examination where he was looking specifically at symptoms of depression, anxiety, and whatever might be going on that way. During the interview, he asked Mr. Gerdon to describe where he was still having pain. Dr. Calhoun then administered the psychological tests. Dr.

6

Calhoun certainly was not unaware of Mr. Gerdon's significant depression and its impact on his life. He stated that Mr. Gerdon was in need of immediate psychological and psychiatric treatment for his depression. However, he testified, "Mr. Gerdon was given some excellent opportunities along the way on an industrially-related basis to have treatment to get better, to move forward, but these preexisting factors prevented him from being able to be successful with that treatment." In his opinion, the pain disorder from Mr. Gerdon's injury was contributing to fifty percent of his depression and his preexisting personality traits of hostility, anger, resentment, and dysthymia were contributing to fifty percent of his depression. The Commission found Dr. Calhoun's testimony persuasive.

"A claimant has the burden of proving to a reasonable degree of medical probability that his or her injury was caused by an industrial accident. The Commission may not decide causation without opinion evidence from a medical expert." *Anderson v. Harper's Inc.*, 143 Idaho 193, 196, 141 P.3d 1062, 1065 (2006) (citation omitted). In this case, expert medical testimony was required to prove that the industrial accident was the predominant cause of Mr. Gerdon's depression. "A party presenting expert testimony has the burden of establishing the credibility of the expert. The credibility of an expert is not simply whether the expert is expressing an honest opinion. The Commission can take into consideration 'whether or not the opinion takes into consideration all relevant facts.'" *Waters v. All Phase Constr.*, 156 Idaho 259, 262, 322 P.3d 992, 995 (2014). One of the facts that Mr. Gerdon was required to prove was that his industrial accident was "the predominant cause as compared to all other causes combined of any consequence for [his depression]." I.C. § 72-451(3). Mr. Gerdon sought to do so through the testimony of Dr. Marsh. The Commission held that Dr. Marsh's opinion was based upon "an inaccurate understanding of the predominant cause standard. Because Dr. Marsh's opinion does not address the appropriate standard, it should be given little weight."

Mr. Gerdon's counsel does not contend on appeal that the Commission erred in finding that Dr. Marsh did not use the standard of predominant cause set forth in Idaho Code section 72-451(3). He asks this Court to reweigh the evidence and conclude that the industrial accident was the predominant cause of Mr. Gerdon's depression. We are prohibited from doing so by Article V, section 9, of the Idaho Constitution. Were we to reweigh the evidence, we would be not only be violating the Constitution, but we would be "justly chargeable with reckless disregard of official oath and public duty." *Cohn v. Kingsley*, 5 Idaho 416, 435, 49 P. 985, 991-92 (1897).

7

"We will not disturb the Commission's conclusions as to the weight and credibility of expert testimony unless such conclusions are clearly erroneous." *Lorca-Merono v. Yokes Wash. Foods, Inc.*, 137 Idaho 446, 451, 50 P.3d 461, 466 (2002). To find that it was clearly erroneous for the Commission to accept the expert opinion of Dr. Calhoun regarding causation, we would have to find that a reasonable mind could not have relied upon his opinion. *Talbot v. Desert View Care Ctr.*, 156 Idaho 517, 520, 328 P.3d 497, 500 (2014). Even if we were to find that a reasonable mind could not have accepted Dr. Calhoun's opinion, which we do not, that would not have cured the defect in Dr. Marsh's opinion. His opinion would still be entitled to little weight and would be insufficient to meet Mr. Gerdon's burden of proof. The Commission's decision that Mr. Gerdon failed to meet his burden of proof is not clearly erroneous.

## III.
## Conclusion.

We affirm the order of the Industrial Commission, and we award Respondents costs on appeal.

Justices W. JONES and HORTON **CONCUR.**

J. JONES, Chief Justice, dissenting.

I dissent because the Industrial Commission made two errors of law in its decision. First, the Commission erroneously concluded there was a 51% proof requirement in order to meet the predominant cause standard under Idaho Code section 72-451(3). Second, despite its claim to the contrary, the Commission improperly disregarded the positive, uncontradicted testimony of Gerdon's family members and friends who testified as to his mental condition prior to the accident. Based upon these legal errors, I would vacate the Commission's decision.

Where an injured worker seeks worker's compensation benefits for a psychological injury resulting from a covered accident, the "accident and injury must be the predominant cause as compared to all other causes combined of any consequence where benefits are claimed." I.C. § 72-451(3). There is no exact percentage requirement under the statute. Thus, an injured worker need only show that the accident predominates by the slightest amount over 50%. Presumably, the worker is entitled to benefits if the accident-caused injury predominates by 50.001% or more.

8

In this case, Dr. Calhoun, the Respondents' expert, opined that the accident had a 50% causal effect for Gerdon's injury. Thus, based solely upon Dr. Calhoun's opinion, Gerdon may have fallen about .001% short in his proof.

The Commission found that Gerdon:

> makes a valiant argument encouraging the Referee and the Commission to find that, within the 50% of Claimant's current depressive state that Dr. Calhoun attributes to preexisting hostility, anger, resentment and dysthymia, at least 1% is attributable to his industrial injury and, thus, Claimant has proved the 51% necessary to meet the predominant factor standard. Such a holding, however, would require the rejection of Dr. Calhoun's well-founded, clearly stated opinion, which the evidence in the record does not justify.

It might first be observed that there is no evidence in the record that would require the rejection of Dr. Calhoun's opinion attributing a 50% causal effect for Gerdon's psychological injury to the accident. However, there is evidence in the record to justify supplementing, but not rejecting, the 50% causal factor to which Dr. Calhoun opined. More importantly, the Commission appears to assume that the standard of proof necessary to meet the predominant cause standard is 51%. There is no such requirement in the statute.

It is obvious that the Commission's decision was based solely on the opinion testimony of Dr. Calhoun. According to the Commission:

> Dr. Calhoun opined that the industrial injury of June 13, 2008 is not the predominant cause of Claimant's present depressed state. Instead, it is 50% due to his chronic pain from his industrial injuries, and 50% due to Claimant's preexisting personality traits of hostility, anger, resentment, and dysthymia, which were consistently identified by psychology testing over time.

This is cutting it fairly fine. The Commission treated Dr. Calhoun's testimony as if it were an immutable mathematical calculation and apparently assumed that psychological supposition based on after-the-fact testing is capable of pinpoint accuracy. I think we know that is not true.[2] Information unknown to Dr. Calhoun regarding personality traits exhibited by Gerdon prior to his accident could cause a slight variation in his opinion testimony. For example, if Dr. Calhoun was unaware of Gerdon's state of mind and psychological condition prior to the accident, the predominant cause could be shifted in Gerdon's favor. Based upon evidence that the

---

[2] This Court recognized the "nonconclusiveness of psychiatric testimony" in *State v. Myers*, 94 Idaho 570, 576, 494 P.2d 574, 580 (1972), where the Court observed that psychiatric opinion testimony does not appear to be "an exact science with regard to uniformity of theories, diagnoses and conclusions among its practitioners," so as to make such testimony binding upon a trier of fact. Although Dr. Calhoun is a psychologist, instead of a psychiatrist, the same observation would hold true for psychological testimony.

Commission did not consider, but which our previous decisions required it to consider, Gerdon should likely have prevailed.

According to the Commission, Dr. Marsh, Gerdon's medical expert, "opined that Claimant's industrially related chronic pain is the predominant cause of his depression. He based his opinion on his history of treating Claimant's pain and Claimant's lack of any prior treatment for psychological conditions." The Commission found Dr. Marsh to be "qualified to opine regarding Claimant's condition," and further found his opinion to be "credible, but . . .limited by its narrow foundation." However, because Dr. Marsh, a medical doctor, is a pain specialist who "does not treat psychological conditions," the Commission determined that his opinion "should be given little weight." Actually, the Commission discarded Dr. Marsh's opinion entirely, giving it no weight, as evidenced by its sole reliance on Dr. Calhoun's 50-50 assessment.

Let's assume that Dr. Marsh's testimony was completely without merit and entitled to no weight whatsoever. The only testimony of record before the Commission regarding Gerdon's pre-accident mental state was that of Gerdon's mother, wife, and friends. The Commission found:

> Claimant's mother, wife, and friends all testified that Claimant was an optimistic, fun-loving person with no history of anger before his industrial accident, but he became withdrawn, hostile, self-pitying, and unlikeable afterward. Their testimony regarding the change in Claimant's personality following his industrial accident is undisputed and persuasive.

However, the Commission concluded that "[t]he observations of Claimant's mother, wife, and friends are inadequate to overcome Dr. Calhoun's opinion as to Claimant's preexisting psychological condition." The Commission was correct in stating that this testimony could not "overcome" Dr. Calhoun's testimony. It is not suggested that the testimony of friends and family should "overcome" or result in "rejection" of Dr. Calhoun's opinion. Rather, his expert opinion establishes that 50% of Gerdon's psychological injury resulted from the industrial accident. This established a floor and the testimony of friends and family certainly should have been seen as supplementing Dr. Calhoun's testimony, particularly because Gerdon's witnesses filled in for gaps in Dr. Calhoun's knowledge.

During oral argument before the Court, Respondents' attorney acknowledged that Dr. Calhoun did not have the benefit of the testimony of Gerdon's witnesses when he made his 50-50 determination and that it would have been helpful if Dr. Calhoun had had that knowledge when he formulated his opinion. Dr. Calhoun acknowledged that Gerdon's friends would likely have

10

an inkling of his pre-accident psychological state "by just being around him." The following testimony appears in Dr. Calhoun's deposition:

> Q. [Gerdon's counsel] One last thing just to touch on some of the preexisting conclusions that you made. Is it possible for you to diagnosis someone with that, or is it possible for you to not see that in someone if you're close to them?
>
> And to make my question a little more clear: If I'm a good friend of [Gerdon's], do I know that he has anger and hostility and resentfulness just by being around him?
>
> A. [Dr. Calhoun] Oh, I'm sure you would, yes. I'm sure there were times where he would lose his temper around friends or family, or where there times when he would show subtle depression, that kind of thing.

Yet, Dr. Calhoun was not given privy to the sworn testimony of Gerdon's family and friends as to the absence of anger, hostility and resentfulness on the part of Gerdon prior to the accident. Dr. Calhoun's opinion was based solely on testing which took place well after the accident. The Commission did have privy to the testimony of Gerdon's witnesses but totally disregarded it in all respects, not even seeing it as a potential infirmity in Dr. Calhoun's opinion. The Commission claimed that it took this testimony into account, but in reviewing the decision there is no hint that this is true. The Commission's decision hinged solely on the opinion of one witness to the exclusion of all other evidence.

The Commission and this Court have often discounted medical opinions by experts who do not have knowledge of a worker compensation claimant's pre-injury history. For example, in *Mazzone v. Texas Roadhouse, Inc.*, 154 Idaho 750, 756, 302 P.3d 718, 724 (2013), the Court affirmed a Commission decision where the referee discounted the testimony of a claimant's medical expert who "inadequately reviewed [the claimant's] medical psychiatric history." In determining whether the claimant in that case demonstrated that the industrial accident was the predominant cause of a psychological injury, this Court examined the claimant's account of his pre-accident psychological condition, as well as other evidence of his pre-accident medical stressors. *Id.* at 757, 302 P.3d at 725. In my opinion, we should do likewise in this case. That is, the Court should use Dr. Calhoun's 50% causation figure as a starting point or floor and determine whether any evidence that was ignored by the Commission would tend to provide the additional .001% or so factor necessary to support the predominant causation of his injury.

11

This Court has repeatedly held that the uncontradicted testimony of a credible witness should not be disregarded. In a 1937 worker's compensation case, *Pierstorff v. Gray's Auto Shop*, 58 Idaho 438, 447–48, 74 P.2d 171, 175 (1937), the Court said:

> The rule applicable to all witnesses, whether parties or interested in the event of an action, is, that either a board, court, or jury must accept as true the positive, uncontradicted testimony of a credible witness, unless his testimony is inherently improbable, or rendered so by facts and circumstances disclosed at the hearing or trial. . . . In *Jeffrey v. Trouse*, 100 Mont. 538, 50 P.2d 872, 874 [(1935)], it is held that neither the trial court nor a jury may arbitrarily or capriciously disregard the testimony of a witness unimpeached by any of the modes known to the law, if such testimony does not exceed probability.

*See, also, Mazzone* at 758, 302 P.3d at 728. The Commission obviously ignored the testimony of Gerdon's witnesses that he exhibited no anger or hostility prior to the accident, which Dr. Calhoun conceded they would have observed just by being around him. Dr. Calhoun did not have the benefit of this evidence in making his 50-50 assessment, having therefore to rely solely on his after-the-fact testing.

The Commission incorrectly portrayed this case as one where it had to believe either Dr. Calhoun, on the one hand, or Gerdon's witnesses, on the other. That is, even though Dr. Marsh and Gerdon's other witnesses were credible, they could not be believed because that would require the rejection or overcoming of Dr. Calhoun's testimony. That is not the case. Dr. Calhoun testified that 50% of Gerdon's psychological injury was attributable to the accident. Dr. Marsh testified that the accident was the predominant cause. Gerdon and his friends and family testified likewise. The friends and family filled a gaping hole in Dr. Calhoun's knowledge of Gerdon's pre-accident history, providing direct, undisputed, and persuasive evidence of Gerdon's pre- and post-accident mental condition. This is not a situation where the testimony was at such odds that you had to believe either one side or the other, but not both.

Neither is this case analogous to a case in the civil arena under Idaho's comparative negligence statute where a plaintiff is denied recovery based on a 50-50 decision by the trier of fact. The situations are not comparable. The fact-finder in a comparable negligence case makes the decision based upon consideration of all of the evidence, not where as here, the decision hinges solely on the testimony of a single witness, to the exclusion of all other evidence. Further, in the comparative negligence setting, there is no public policy favoring compensability in the event of doubt, as there is in the worker's compensation setting. As the Commission stated in its decision:

12

The provisions of the Workers' Compensation Law are to be liberally construed in favor of the employee. *Haldiman v. American Fine Foods*, 117 Idaho 955, 956, 793 P.2d 187, 188 (1990). The humane purposes which is serves leave no room for narrow, technical construction. *Ogden v. Thompson*, 128 Idaho 87, 88, 910 P.2d 759, 760 (1996). However, the Commission is not required to construe facts liberally in favor of the worker when evidence is conflicting. *Aldrich v. Lamb-Weston, Inc.*, 122 Idaho 361, 363, 834 P.2d 878, 880 (1992).

As noted above, the Commission here saw more conflict in the evidence than really existed. The *Haldiman* and *Ogden* principles are often stated in Commission decisions, but less often observed. I would vacate the decision in this case and remand the matter back to the Commission.

Justice Pro Tem KIDWELL CONCURS.